IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2005 Session

**KENDRICK F. LOVE v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Giles County
No. 11297   Stella Hargrove, Judge**

---

**No. M2004-01591-CCA-R3-PC - Filed July 20, 2005**

---

A Giles County Jury convicted the Petitioner, Kendrick F. Love, of multiple felony cocaine offenses, and the trial court imposed an effective sentence of twenty-eight years.  On direct appeal, this Court affirmed the Petitioner's convictions and sentences.  The Petitioner filed a petition for post-conviction relief, contending that he was denied effective assistance of counsel.  Following a hearing, the post-conviction court dismissed the petition.  After thoroughly reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and ALAN E. GLENN, J., joined.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the appellant, Kendrick F. Love.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Mike Bottoms, District Attorney General; and Patrick S. Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

In 2000, a Giles County Grand Jury indicted the Petitioner on four counts of delivery of cocaine and four counts of sale of cocaine, all Class B felonies.  A jury convicted the Petitioner of one count of facilitation of the sale of cocaine, one count of facilitation of the delivery of cocaine, three counts of the sale of cocaine, and three counts of delivery of cocaine.  The trial court merged the four drug-related delivery offenses into the four drug-related sale offenses, and it sentenced the Petitioner to ten years for the facilitation of the sale of cocaine and to eighteen years for each count of the sale of cocaine.  The trial court ordered the three eighteen-year sentences to run concurrently with each other, but consecutively to the sentence for the facilitation of the sale of cocaine

conviction, for an effective sentence of twenty-eight years. On direct appeal, this Court affirmed the Petitioner's convictions and sentence. State v. Kendrick F. Love, No. M2002-00126-CCA-R3-CD, 2003 WL 358258, at *1 (Tenn. Crim. App., at Nashville, Feb. 18, 2003), *perm. app. denied* (Tenn. 2003). The Petitioner filed a pro se petition for post-conviction relief on the grounds that he was denied effective assistance of counsel. The trial court appointed counsel for the Petitioner, and the appointed counsel filed an amended petition. In the amended petition, the Petitioner asserted that he was denied effective assistance of counsel because Counsel failed to: (1) adequately prepare a proper record for his appeal by not including the severance hearing transcript; (2) review with the Petitioner four audio tape recordings that were admitted as evidence at trial; (3) investigate the Petitioner's alibi defense; and (4) notify the Petitioner that the State filed notice for enhanced punishment.

This Court summarized the facts on direct appeal as follows:

Three of the transactions [that are the basis for these convictions] occurred in September of 1999, and the fourth occurred in April of 2000. The record reflects that on September 9, 1999, police officer Irvin Murr, an undercover narcotics agent for the Giles County Sheriff's Department, arranged a meeting with Scottie Holt and Immanuel Harney to purchase an ounce of "crack" cocaine. Officer Murr drove to Mr. Harney's house, where he picked up Mr. Harney and Mr. Holt. Mr. Harney contacted [the Petitioner], and Officer Murr drove to a location where they picked up [the Petitioner]. [The Petitioner] told Officer Murr to drive to Pulaski, Tennessee, where he dropped [the Petitioner] off to get the cocaine. [The Petitioner] instructed Officer Murr to circle the block and pick him up again at that same location.

Officer Murr was circling the block for a second time when he saw [the Petitioner] in another vehicle driving in the opposite direction. He turned around and followed [the Petitioner] into a parking lot. [The Petitioner] approached Officer Murr's vehicle and handed Scottie Holt, who was sitting in the passenger seat, a plastic bag containing a solid block of cocaine. Mr. Holt handed the cocaine to Officer Murr. Officer Murr gave [the Petitioner] $1,200. [The Petitioner] walked back over to the other vehicle and briefly spoke to the driver. He then got back into Officer Murr's vehicle, and Officer Murr drove him to Skeeter's Place, a bar in Elkton, where he dropped him off. Officer Murr testified that he argued over the price of the cocaine with [the Petitioner], and [the Petitioner] told him that if he continued to buy cocaine from him and showed him that he was a regular customer, he would lower the price.

On September 17, 1999, Officer Murr again met with Mr. Harney to purchase half an ounce of "crack" cocaine. Officer Murr drove to Mr. Harney's residence and picked him up. They were driving to Prospect, Tennessee, when they met [the Petitioner] driving in the opposite direction. They stopped at a gas station, and [the Petitioner] got into Officer Murr's car and took out a plastic bag containing several rocks of cocaine. [The Petitioner] offered to sell thirty rocks to Officer Murr for

$300. Officer Murr purchased the cocaine.

On September 23, 1999, Officer Murr attempted to contact [the Petitioner] by phone, but he was unsuccessful. He later met [the Petitioner] at a market in Elkton, Tennessee. Officer Murr told [the Petitioner] that he wanted to purchase an ounce of cocaine. Officer Murr drove [the Petitioner] to Pulaski, Tennessee and dropped him off at the same location where he had dropped him off on September 9, 1999. Officer Murr later picked up [the Petitioner], and [the Petitioner] handed him a plastic bag containing both powder and solid forms of cocaine, for which Officer Murr paid [the Petitioner]  $1,200.

On April 26, 2000, Officer Murr contacted Tammy Holt and told her that he wanted to purchase an "eightball" of cocaine. Officer Murr drove to Ms. Holt's home. When he arrived, he observed [the Petitioner] sitting in a vehicle in front of Ms. Holt's house, smoking marijuana with Ralph Richardson, from whom he expected to buy the cocaine. [The Petitioner] told Officer Murr that he was the one with the cocaine and handed Officer Murr the "crack" cocaine wrapped in a piece of paper, for which Officer Murr gave [the Petitioner] $150.

Id. at *1-2

The following evidence was presented at the post-conviction hearing. The Petitioner testified that his trial counsel, William Mike Harris ("Counsel"), was appointed to represent him at his trial. The Petitioner testified that he was sentenced as a Range II multiple offender, and that prior to trial, he did not know the difference between a Range I and Range II classification. He testified that the difference was not explained to him, but he thought that he was going to be sentenced as a Range I offender, which was the reason that he decided to proceed to trial instead of entering a plea. He said that he learned on the day of his trial that he was to be sentenced as a Range II offender. The Petitioner stated that, prior to trial, he was unaware that the State filed a notice of enhancement for his punishment. He explained that he did not receive a copy of such notice, and he did not know if Counsel received notice. The Petitioner testified that he learned of the State's notice on the day of trial, and Counsel did not explain the effect of the notice to him. The Petitioner testified that, prior to trial, the State offered to request a twenty-year sentence in exchange for him pleading guilty, but he did not accept the State's offer. The Petitioner stated that the fact that the State was seeking to enhance his punishment would have "probably" affected his decision to go to trial because he assumed that, if he went to trial, he would not receive twenty years, and, therefore, he would have taken the plea agreement.

The Petitioner testified that, at trial, the only physical evidence that the State introduced against him were audio tape recordings. He said that he did not hear the tapes prior to his trial, and, at trial, he did not hear the tapes in their entirety. The Petitioner stated that Counsel told him that they would listen to the tapes before trial, but they did not do so until trial. He said that, prior to trial, he met with Counsel "two or three times" at the Giles County Jail, where he was incarcerated.

He said that the tapes contained transactions that "supposedly" occurred between the Petitioner and Officer Irvin Murr. The Petitioner testified that, prior to trial, he knew that the tapes existed and that the State was going to introduce them, but he did not hear any portion of the tapes until the day of the trial. He said that Counsel did not discuss with him the contents of the tapes. The Petitioner further testified that Counsel "was having a difficult time" getting copies of the tapes, and he did not know if Counsel ever listened to the tapes. He said that he "continued to request to hear the tap[e]s," but Counsel said that Counsel was going to listen to the tapes. He stated that, had he listened to the tapes prior to trial, he would have known that he was a Range II offender, and he "would have more than likely took a plea." The Petitioner said that, during trial, he did not raise the issue of his not hearing the tapes. He agreed that the tapes were damaging to his defense.

The Petitioner testified that, prior to trial, he discussed his defense with Counsel. He told Counsel that he wanted to maintain his innocence and "respond throughout the trial," but Counsel only discussed with him the possibility of solicitation, instead of sale, of cocaine. The Petitioner testified that he told Counsel that he had an alibi defense that he wanted to raise, and he gave Counsel the two names of his alibi witnesses, Lee Ann Clark and Resa Emmons. He stated that he gave Counsel the witnesses' names and addresses, and he asked Counsel to investigate these witnesses. He said that he did not know if Counsel investigated the witnesses, and he did not hear anything else about this issue. He said that the two alibi witnesses were not called as witnesses at trial, and he stated that one of the witnesses, Clark, was present at the post-conviction hearing. The Petitioner stated that Counsel said that he would "check into" an alibi defense, but when Counsel discussed his case Counsel only mentioned "a plea or solicitation." He stated that, after he told Counsel that he wanted to take the plea agreement, Counsel told him that they would "go with solicitation."

On cross-examination, the Petitioner testified that Counsel did not think that he should testify at trial, and he did not testify. The Petitioner agreed that Counsel told him that it was the Petitioner's decision whether or not to testify. The Petitioner stated that the judge told him that he had a right to testify, and he waived that right. He testified that one alibi witness, Emmons, is a friend he met in 1995 who lives in Fayetteville, but he did not know her address or telephone number. He stated that she might have testified that she was with the Petitioner on some of the dates of these offenses, but he did not remember the specific dates. The Petitioner testified that his other alibi witness, Clark, is a friend that he met at Martin Methodist College, and he called her from jail two or three times per year. He said that, on some of the dates in question, he was with Clark, but he did not remember the specific dates. He stated that Clark might have testified that she was with the Petitioner on "some days," but she probably would not remember specific dates because two or three years had passed. The Petitioner stated that he told Counsel that he was with these women on some of the specific dates from the indictment, and Counsel did not call them to testify at his trial.

The Petitioner stated that the first time that he learned the difference between Range I and Range II classifications was when he researched the difference after his sentencing hearing and while he was incarcerated. The Petitioner conceded that he had previously said that, had known the plea agreement including being sentenced as a Range II offender, he would have taken the plea offer. He

did not think that this position was inconsistent with him maintaining his innocence through trial. The Petitioner testified it was not inconsistent for him to consider a plea because Counsel's defense was that the Petitioner's voice was recorded on the tapes but that he was only involved in solicitation.

The Petitioner testified that he was unaware that the State filed notice to enhance his punishment, and he stated that Counsel said that the paperwork was not filed properly. He agreed that the State "said something about enhancement," but Counsel told him that he was a Range I offender, not a Range II offender. The Petitioner acknowledged that, at trial, the judge explained that the State had filed the proper paperwork, and the Petitioner would be classified as a Range II offender. The Petitioner testified that, after he learned his range classification, he did not attempt to take the plea offer. On redirect-examination, the Petitioner testified that he knew the dates on which the offenses that he was tried for occurred, but he did not recall those dates now. He said that the alibi defense was for at least two or more of the offenses, and his claim of innocence was for all of the charges. He testified that, prior to trial, he would not have considered the plea agreement because he was innocent.

Counsel testified that he was appointed to represent the Petitioner, and he said that, during this representation, he visited the Petitioner in jail four times. He recalled that he also had phone conversations with the Petitioner, and met with the Petitioner the day before or the day of his trial. Counsel testified that the physical evidence against the Petitioner included the actual drugs, audio tape recordings, witness testimony, and, possibly, laboratory reports of the drugs. He said that he knew about the tape recordings because they were provided to him through discovery, and he listened to the tape recordings in their entirety. Counsel stated that the tape recordings that were entered at trial were not the same tape recordings that he had obtained through discovery. He explained that the tape recordings that were provided to him were four standard size cassette tapes, one for each of the alleged sales. Counsel testified that, through the police department dubbing process, the police recorded the cassette tapes at double speed, and, therefore, he had to use machinery to slow down the speed so that he could understand the tapes, and he lost some of the audio quality during this process. He said that, at trial, a micro-recorder was used to play the tapes for the jury, and the tapes were not good quality. He believed that the jury had a difficult time understanding the tapes. He agreed that he was able to listen to the tapes, but the quality of the tapes he listened to was different from the quality of the tapes that were played at trial. Counsel testified that he did not recall listening to the tapes with the Petitioner, but he disclosed to the Petitioner that the tapes existed. He recalled that he and the Petitioner discussed that, if the tapes were introduced at trial, they would only supplement the undercover officer's testimony. He said that he believed that he played "a portion of some of the tapes" for the Petitioner, but he was not certain, and he did not recall bringing a tape recorder with him to the jail when he visited the Petitioner. Counsel testified that he did not recall whether the Petitioner asked to listen to the tapes. He stated that, because the tapes were in poor quality, he discussed with the Petitioner that the State's case could not be based entirely on the tapes because, in his opinion, the tapes were not enough to convict the Petitioner. He stated that he objected to the admission of the tapes because there was an indication that he was not supplied the "full tapes."

Counsel stated that he did not recall whether the State filed a specific notice of enhancement, but he said that the State filed a notice, on July 16, 2001, under Tennessee Rules of Evidence 404 and 609 to impeach the Petitioner with prior convictions. He said that he filed a motion in limine to exclude the Petitioner's prior convictions, and he testified that he specifically argued that the State was going to use the Petitioner's prior convictions without the Petitioner taking the stand. Counsel testified that the trial court determined that the State's notice provided constructive notice of enhancement because the State had identified that the Petitioner was a Range II multiple offender and had listed all of the Petitioner's prior felony convictions. He said that, therefore, he was aware of the possibility that the Petitioner would be classified as a multiple offender, and he discussed this with the Petitioner. He recalled that he told the Petitioner that this might be grounds for appeal because he would argue that the notice to enhance was not proper. Counsel stated that, to the best of his knowledge, he and the Petitioner discussed that the Petitioner's prior convictions could be used to enhance his sentence if he was convicted. Counsel testified that he handled the Petitioner's appeal, and he addressed the trial court's denial of severance of the offenses. He admitted that he did not provide the Court of Criminal Appeals with an adequate record to review the issue of severance of the offenses.

On cross-examination, Counsel testified that he spent a total of 40.9 hours on this case, which included his meetings with the Petitioner, the sentencing hearing, and the motion for new trial. He said that he spent additional time that was not included on his fee claim form because there is a limit on the amount that he can charge the State. Counsel stated that he received a notice of the State's intent to use Tennessee Rules of Evidence 404 and 609, and he discussed this with the Petitioner. He said that he discussed with the Petitioner that the Petitioner had a prior record, and that, if convicted, the Petitioner could be sentenced in a higher range. Counsel testified that the State made an offer to settle, which was fourteen years on all of the new charges, to run consecutive to the six-year prior conviction for which the Petitioner was on probation. He said that, to his recollection, the offer was as a Range I standard offender. He testified that he conveyed that offer to the Petitioner, and the Petitioner turned the offer down.

Counsel testified that he has never heard the names Lee Ann Clark or Resa Emmons, and he did not recall the Petitioner requesting that he investigate an alibi defense. He said that he discussed the dates of the alleged transactions with the Petitioner, and the Petitioner did not indicate that he had an alibi of any kind. Counsel testified that, had the Petitioner informed Counsel of an alibi, Counsel would have investigated any alibi, and he would have subpoenaed those alibi witnesses to testify at the Petitioner's trial. Counsel stated that he prepared the Petitioner's case to the best of his ability.

On redirect-examination, Counsel clarified that he argued that the notice the State filed was not a notice of enhancement because it did not clearly so state. He said that, in his research prior to trial, he determined that the State's notice provided constructive notice of enhancement. On re-cross-examination, Counsel testified that he recalled a discussion with the Petitioner about his range classification and the potential that he would be "ranged."

Based upon this evidence, the post-conviction court issued an order of dismissal, stating:

> [U]pon the pro se Petition for Post-Conviction Relief, Amended Petition, the State's Response, testimony of witnesses, statements and arguments of counsel, and the record, from all of which the Court finds that Petitioner has failed to carry his burden of proof and is entitled to no relief under his Petition and Amended Petition for Post-Conviction Relief.

It is from this order of the trial court that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that he should be granted post-conviction relief because he received ineffective assistance of counsel at trial because Counsel failed to: (1) adequately prepare a proper record for his appeal by not including the severance hearing transcript; (2) review with the Petitioner four audio tape recordings that were admitted as evidence at trial; (3) investigate the Petitioner's alibi defense; and (4) notify the Petitioner that the State filed notice for enhanced punishment.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases.

-7-

Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citation omitted); Thomas Brandon Booker v. State, No. W2003-00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. 2004).

First, the Petitioner contends that Counsel was ineffective by failing to include the severance hearing transcript in the appellate record on direct appeal. The State responds that, even if Counsel was ineffective, the Petitioner is not entitled to post-conviction relief because the error was harmless, and, therefore, Counsel's actions did not prejudice the Petitioner.

The appellant in a criminal case has the responsibility to prepare a transcript of "such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired, with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In the Petitioner's direct appeal, this Court noted that the transcript of the Petitioner's severance hearing was not included in the appellate record. Love, 2003 WL 358258, at *6. This Court, therefore, stated that it could not "adequately review the trial court's denial of severance for an abuse of discretion," and it concluded that the issue was waived. Id. The post-conviction court stated that "[Counsel] did all that he could do to present his position on behalf of [the] Petitioner, and he did all that he could to preserve the issue of severance for appeal." We disagree. Counsel admitted that he did not provide this Court with an adequate record to review the issue of severance of the offenses. Counsel provided no explanation or strategy for his failure to include the transcript of the

severance hearing in the appellate record. We conclude that Counsel's failure to provide this Court with the transcript of the severance hearing on direct appeal falls below an objective standard of reasonableness in the legal profession and is not within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936.

Having found that Counsel's failure to file the severance hearing transcript in this case fell below an objective standard of reasonableness in the legal profession, we now turn to the prejudice prong of the ineffective assistance of counsel analysis. The Petitioner contends that Counsel's performance was prejudicial and that "[i]t is highly probable that a proper record would have resulted in the appellate court making a finding that the trial court abused its discretion and reversed the decision." We disagree. In the Petitioner's direct appeal, this Court opined that "[a]lthough we are not able to conclude from the record that the trial court abused its discretion in refusing to sever the offenses, we do conclude that if the denial of severance was error, it does not appear to have affirmatively affected the outcome of the trial." Love, 2003 WL 358258, at *8. This Court concluded that "[t]he strength of the State's case against [the Petitioner] in each of the offenses charged was overwhelming; this renders any error by the trial court harmless." Id. Because we determined the severance issue on its merits, and concluded that any error was harmless, the Petitioner cannot, and did not, prove prejudice. The result on direct appeal would have been exactly the same had the record pertaining to the severance issue been provided, as we stated in that opinion. The Petitioner failed to provide any additional evidence at the post-conviction hearing that showed otherwise. Accordingly, we conclude that this issue is without merit.

Next, the Petitioner contends that Counsel was ineffective for his failure, prior to trial, to review with the Petitioner four audiotapes that were admitted as evidence at the Petitioner's trial. The Petitioner asserts that, if he had heard the audiotapes prior to trial, he would have accepted the plea agreement offered to him by the State. The post-conviction court concluded the following:

> Petitioner testified that he knew that the State was going to use four audiotapes at trial. He testified that he never heard any of them prior to trial, and that hearing them might have had an impact on acceptance of a plea bargain. [Counsel] testified that he received the tapes in discovery and re-dubbed them to attempt to improve the quality. [Counsel] stated that to the best of his recollection, portions of the tapes were played for Petitioner. [Counsel] testified that the tapes were of very poor quality, and that only a word or two could be heard from time to time. [Counsel] testified that he was more concerned with the damaging testimony of the undercover officer, who was armed with very detailed, specific reports. There is no indication to the Court that the tapes were damaging to the Petitioner at trial. The Court has some difficulty when Petitioner says that hearing the tapes would have affected his decision as to a plea bargain. Petitioner testified at the post-conviction hearing that he did not want a plea bargain; he went to trial to prove his innocence. He stated: "Prior to the trial, I wouldn't have take a plea." This ground has no merit.

The Petitioner admitted that he would not have considered the plea agreement offered by the State because he was innocent. Further, the tapes were not the only evidence that the State produced against the Petitioner. At trial, Officer Murr testified about the drug transactions involving the Petitioner. Accordingly, the post-conviction court accredited the testimony of Counsel at the post-conviction hearing and found that the Petitioner was aware of the audiotapes and other evidence against him. Based on this information, the Petitioner made an informed decision, based on his claim of innocence, to proceed to trial. We conclude that the evidence does not preponderate against the post-conviction court's findings, and we conclude that the Petitioner has failed to prove that Counsel's performance with regard to the four audiotapes fell below the level of reasonably effective assistance. This issue is without merit.

The Petitioner next asserts that Counsel was ineffective because Counsel failed to investigate an alibi defense. Specifically, the Petitioner contends that he informed Counsel of two alibi witnesses, and Counsel did not investigate either of these witnesses. The post-conviction court stated the following:

> The Court does not find the testimony of the Petitioner credible when he says that he gave the names of Le[e] Ann Clark and R[esa] Emmons to his attorney as alibi witnesses prior to trial. He complains that [Counsel] failed to contact or question either witness, and failed to investigate his alibi defense. [Counsel] testified that he had never heard of either of these potential witnesses and had no recollection of Petitioner ever even raising an alibi defense. The Court believes [Counsel] when he says that he would have fully investigated any alibi witness suggested by Petitioner. Petitioner testified that while he could not remember the specific dates under the indictment, he felt that one of the females, both of whom were his friends, would have, or could have, been with him. He conceded that neither female contacted [Counsel] prior to trial. This ground has no merit.

In order for a petitioner to establish prejudice from his attorney's failure to locate a witness, the petitioner must have this witness testify at the post-conviction hearing. Roy L. Sherrod v. State, No. 02C01-9806-CR-00164, 1999 WL 450237, at *7 (Tenn. Crim. App., at Jackson, June 30, 1999), *no perm. app. filed*; see also Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a witness or what that witness' testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757. At the post-conviction hearing, the two possible witnesses that the Petitioner claims would have provided him with an alibi, for one or more of the dates in question, did not testify. The Petitioner did not know the address or telephone number of one of the witnesses, Emmons. Clark, who may have been at the post-conviction hearing, did not testify, and she was not subpoenaed to testify. The Petitioner did not present the testimony of these witnesses during the post-conviction hearing, and, therefore, we are

unable to assume their testimony would have supported an alibi defense. See id. The Petitioner has failed to establish that Counsel's performance fell below the level of reasonably effective assistance. This issue is without merit.

Finally, the Petitioner contends that Counsel was ineffective because he failed to notify the Petitioner that the State filed adequate notice to enhance punishment. The State contends that the Petitioner has failed to show that Counsel was deficient in his performance or that, if Counsel had proceeded differently, there would have been a different result. The post-conviction court concluded the following:

> The Court believes that Petitioner is questioning the notice of range of punishment rather than a notice of enhanced punishment. Petitioner testified that he learned from his [C]ounsel on the day of trial that the State was seeking to establish that he was range two. He testified that his attorney assured him that the State's notice was not properly filed and that he was, indeed, range one. Petitioner testified that he turned down a plea bargain of twenty years, and went to trial to prove his innocence. He stated that the maximum he believed he could be sentenced to was twelve years consecutive to a prior sentence of six years, for a total sentence of eighteen years. The Court notes that Petitioner was indicted on eight counts of sale/delivery of cocaine, all Class B. At sentencing, Petitioner was facing two counts of facilitation of the sale/delivery of cocaine, Class C; and six counts of sale/delivery of cocaine, Class B, all as a range two, multiple offender. [Counsel] testified that he thought the notice of ranging was improperly filed, even though range two was clearly checked on the State's form and even though the prior convictions of Petitioner were specifically set out. [Counsel] testified that he discussed ranges with Petitioner, advised him that he could be sentenced to a higher range and talked about ranging as a ground for appeal. [Counsel] candidly admitted to the Court that he had to later concede that the notice of the State was at a minimum, constructive notice as to range two. [Counsel] testified that Petitioner did not want a plea bargain. The Court finds that [Counsel] discussed the possibility of ranging with Petitioner prior to trial, and that Petitioner turned down a plea bargain and proceeded to trial to prove his innocence. This ground has no merit.

We conclude that the evidence does not preponderate against the post-conviction court's finding. The Petitioner testified that he was innocent, and he rejected the plea agreement because he was not involved in these offenses. Counsel discussed with the Petitioner, prior to trial, the possibility of the Petitioner "being ranged" because of the Petitioner's prior convictions. We conclude that the Petitioner has failed to prove that Counsel's performance fell below the standard of reasonably effective assistance. This issue is without merit.

### III.  Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE